IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PROCTER & GAMBLE MANUFACTURING COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ASSOCIATION OF EMPLOYEES OF THE ST. LOUIS PLANT,<br><br>　　　　Defendant. | Case No.  4:18-cv-1026<br><br>**COMPLAINT** |

## **INTRODUCTION**

1.　　Procter & Gamble Manufacturing Company ("Procter & Gamble") moves this Court, pursuant to Section 10 of the Federal Arbitration Act, 9 U.S.C. § 10, and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to vacate the Arbitration Award issued on April 17, 2018 in the matter of *Arbitration between the Association of Employees of the St. Louis Union v. Procter & Gamble Manufacturing Company*.

2.　　The arbitration dealt with a grievance filed by the Association of Employees of the St. Louis Plant ("the Union") on the issue of whether Procter & Gamble had just cause to terminate Nick Hassard, an employee represented by the Union.

3.　　The Arbitration Award, issued by Arbitrator Josef Rohlik, denied the Union's grievance in part and sustained it in part, reinstating Nick Hassard without back pay.

4.　　By ordering that Nick Hassard be reinstated to employment with Procter & Gamble without back pay, Arbitrator Rohlik exceeded his authority under the collective bargaining agreement because: (1) he ignored the parties' negotiated discipline policy and

1

improperly considered factual errors not in the record; and (2) he found that just cause existed for Nick Hassard's termination but reinstated him anyway.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185(a), which provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of both parties."

6. This Court also has jurisdiction pursuant to Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10.

7. As a result, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

8. Venue is proper in the United States District Court for the Eastern District of Missouri pursuant to 9 U.S.C. § 10(a), which provides that "the United States court in and for the district wherein the [arbitration] award was made may make an order vacating the award upon the application of any party to the arbitration."

9. Venue is also proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

10. Procter & Gamble is a corporation organized and existing under the laws of the state of Delaware and owns and operates a manufacturing facility in St. Louis Missouri that produces and distributes household liquid cleaning products throughout the United States.

11. The Union is the exclusive bargaining representative of all employees at Procter & Gamble's St. Louis facility, except managers and confidential employees, and is a "labor organization" as defined by the LMRA.

12. Upon information and belief, the Union is based in St. Louis, Missouri.

## FACTUAL BACKGROUND

13. Procter & Gamble and the Union are parties to a collective bargaining agreement ("CBA") which requires that any grievance involving the application or interpretation of the provisions of the CBA shall be submitted to arbitration. (CBA at p. 33, Ex. 1; Dressman Decl., Ex. 2).

14. Article XIV of the CBA governs the handling of grievances and limits an arbitrator's authority as follows:

> In the event that this procedure does not accomplish speedy and satisfactory adjustment, any grievance involving the application or interpretation of the provisions of this Agreement shall be submitted to a Board of Arbitration. The request for submission of a grievance to a board of arbitration shall be made within 90 calendar days of the second step response. ***The Board of Arbitration shall confine its consideration to the issue or issues stipulated jointly in writing by the Employer and the Union before the Board of Arbitration convenes, and they shall neither add to nor subject from the written stipulation or the written provisions of this agreement in making a decision***. In the event that the arbitration is called for by either party hereto, the Employer and the Union shall each appoint one arbitrator within fifteen (15) days after such a request. The third and neutral arbitrator will be selected from an agreed upon list of seven (7) neutral arbitrators who are Gerard A. Fowler, Esq., James C. Duff, Esq Josef Rohlik,., Ellen J. Alexander, Esq., George R. Fleschli, Robert W. McAllister, Esq, and Nancy D. Powers, Esq. The selection of the third neutral arbitrator will be in the order listed and shall be in the same rotation thereafter.

(CBA at pp. 33-34, Ex. 1) (emphasis added).

15. The CBA further provides in Article XVII that, "[a]s a condition of employment, all employees shall observe the rules and regulations of the Employer now existing or that may be laid down from time to time." (CBA at p. 37, Ex. 1).

16. Accordingly, the CBA incorporates by reference Procter & Gamble's rules and regulations and states in no uncertain terms that such rules and regulations are enforceable terms and conditions of employment. (CBA at p. 37, Ex. 1).

17. Consistent with Article XVII of the CBA, Procter & Gamble and the Union negotiated and implemented a disciplinary policy. The disciplinary policy includes a four-step Progressive Discipline System which provides as follows:

| **STEPS** | **IMPACT** |
|---|---|
| 1. Oral reminder | Note in File<br>No promotions, transfers or roles for 6 months |
| 2. Written reminder | Note in File<br>No promotions, transfers or roles for 9 months |
| 3. Decision Making Leave | Note in File<br>No promotions, transfers or roles for 12 months |
| 4. Termination | |

(Dressman Decl., Ex. 2).

## THE ARBITRATION AWARD

18. On July 27, 2017, Procter & Gamble terminated the employment of bargaining unit employee and technician Nick Hassard ("the Grievant") after he repeatedly disregarded Procter & Gamble's well-established safety standards, despite previous warnings, and placed himself and his co-workers in significant danger when he failed to lock and tag out hazardous energy from a large piece of machinery for a third time. (Dressman Decl., Ex. 2).

19. Prior to his third and final lockout/tagout violation, Procter & Gamble had already placed the Grievant in Step 3 of the Progressive Discipline System as a result of the Grievant having committed a number of previous safety violations, discipline which neither the Union nor the Grievant ever challenged. (Dressman Decl. Ex. 2).

20. Following the Grievant's termination, the Union filed a grievance in which it contended that Procter & Gamble lacked just cause to terminate the Grievant. (Dressman Decl., Ex. 2).

4

21. When the grievance was not resolved, the Union submitted the grievance to arbitration pursuant to the CBA.

22. The grievance was ultimately submitted to a three-member Board of Arbitration consistent with the CBA, which consisted of Marianne Dressman for Procter & Gamble, Michael Reilman for the Union, and Josef Rohlik as the third and neutral arbitrator (Rohlik, as the third and neutral decision maker, is hereinafter referred to as "the Arbitrator").  (Dressman Decl., Ex. 2).

23. On December 16, 2017, the Arbitrator conducted an evidentiary hearing, during which Procter & Gamble and the Union stipulated that the Arbitrator would limit his consideration to the issue of "Did Procter & Gamble have just cause to terminate the Grievant, and, if not, what is the proper remedy?"  A copy of the hearing transcript is attached hereto as Exhibit 3.  (Dressman Decl., Ex. 2; Hearing Tr. at p. 21, Ex. 3).

24. Following the December 16, 2017 arbitration hearing, the parties prepared and submitted post-hearing briefs to the Arbitrator which summarized the facts and merits of the case.  (Dressman Decl., Ex. 2).

25. On April 17, 2018, the Arbitrator issued and delivered to the parties a written opinion and award (the "Arbitration Award") which included reference to the parties' negotiated four-step Progressive Discipline System and determined that "<u>the Company did not abuse its discretion as a matter of violation of the Agreement, its Rules, and the Practice of the Parties</u>" in its decision to terminate the Grievant's employment.  A copy of the Arbitration Award is attached hereto as Exhibit 4.  (Arbitration Award, Ex. 4) (emphasis in original).

26. Specifically, the Arbitration Award included the Arbitrator's conclusions that: (i) the Grievant knew very well Procter & Gamble's lockout/tagout procedures (commonly referred

5

to as "LOTO") and the consequences of violating such safety procedures and thus was adequately trained; (ii) the Grievant acknowledged that he could be discharged for repeated safety violations and was specifically warned and provided sufficient notice that any further violations would result in his discharge; (iii) Procter & Gamble followed its progressive discipline system in discharging the Grievant after he was previously placed in Step 3 discipline and warned that another infraction would result in termination; (iv) the Grievant's prior Step 3 discipline had not expired at the time of his third and final safety violation; (v) Procter & Gamble conducted a careful investigation of the Grievant's third and final lockout/tagout violation; and finally that, (vi) the Union failed to establish any discrimination in Procter & Gamble's decision to advance the Grievant's discipline to Step 4 termination. (Arbitration Award, Ex. 4).

27. The Arbitrator added, "both under the evidence herein and the rule of reason it cannot be concluded that the Company could not decide to discharge the Grievant after the third LOTO violation." (Arbitration Award, Ex. 4) (emphasis in original).

28. Despite his explicit determination that the Company did not abuse its discretion in terminating the Grievant, and contrary to his above-referenced conclusions, the Arbitrator nonetheless rescinded Procter & Gamble's decision to discharge the Grievant and reinstated him without back pay or other benefits. (Arbitration Award, Ex. 4).

29. The Arbitrator's decision to reinstate the Grievant is supported by his conclusion that "the Grievant must have been devastated by the death of his daughter, which this arbitrator thinks might cloud the thinking of almost anyone." (Arbitration Award at p. 15, Ex. 4).

## COUNT ONE

30. Procter & Gamble realleges and incorporates paragraphs 1 through 29 herein by reference.

6

31.     The CBA states that the Arbitrator "shall neither add to nor subtract from the written stipulation or the written provisions of [the CBA] in making a decision."  (CBA at p. 33, Ex. 1; Arbitration Award, Ex. 4).

32.     Article XVIII of the CBA includes the written provision that "[a]s a condition of employment, all employees shall observe the rules and regulations of the Employer now existing or that may be laid down from time to time."  (CBA at p. 37, Ex. 1).

33.     Pursuant to Article XVIII of the CBA, the parties negotiated and implemented a disciplinary policy which includes a four-step Progressive Discipline System.  (Dressman Decl., Ex. 2; Arbitration Award, Ex. 4).

34.     The Arbitrator concluded that "the Company did not abuse its discretion as a matter of violation of the Agreement, its Rules, and the Practice of the Parties" in its decision to escalate the Grievant's Step 3 discipline to Step 4 termination consistent with the Progressive Discipline System.  (Arbitration Award, Ex. 4) (emphasis in original).

35.     In reinstating the Grievant, however, the Arbitrator disregarded his own findings and exceeded his authority by subtracting from the CBA the written provision that all employees follow Procter & Gamble's rules and regulations (including its disciplinary policy and procedures) as a condition of employment.

36.     In reinstating the Grievant, the Arbitrator also relied on factual errors, specifically that "the Grievant must have been devastated by the death of his daughter, which this arbitrator thinks might cloud the thinking of almost anyone," which is entirely inconsistent with the parties' repeated indications at hearing that the Grievant's daughter did not pass away prior to his third and final safety violation.  (Hearing Tr. at pp. 29, 250-251, Ex. 3).

7

37. Because the Arbitrator exceeded the scope of his authority, by ignoring written provisions of the CBA and relying on clear factual errors, the Arbitration Award should be vacated, pursuant to Section 10(a)(4) of the Federal Arbitration Act, 9 U.S.C. § 10, and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

### COUNT TWO

38. Procter & Gamble realleges and incorporates paragraphs 1 through 37 herein by reference.

39. The Arbitrator's findings that Procter & Gamble "<u>did not abuse its discretion as a matter of violation of the Agreement, its Rules, and the Practice of the Parties</u>" constituted an implicit, if not explicit, finding that Procter & Gamble had just cause to terminate the Grievant. (Arbitration Award, Ex. 4).

40. The Arbitrator's just cause finding is further supported by his conclusion that "both under the evidence herein and the rule of reasons it <u>cannot</u> be concluded that the Company could not decide to discharge the Grievant after the third LOTO violation." (Arbitration Award, Ex. 4).

41. By finding just cause for termination and then proceeding to fashion an alternate remedy without any basis in the parties' CBA, the Arbitrator exceeded the scope of his authority.

42. Because the Arbitrator exceeded his authority under the CBA, the Arbitration Award should be vacated pursuant to Section 10(a)(4) of the Federal Arbitration Act, 9 U.S.C. § 10, and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

43.

**WHEREFORE**, Procter & Gamble respectfully requests that this Court issue an Order:

1. Vacating and setting aside the Arbitrator's April 17, 2018 Award as exceeding the scope of the Arbitrator's authority; and

2. Awarding such costs, fees, and other remedies as this Court deems appropriate.


Dated:  June 25, 2018.

                              Respectfully submitted,

                              s/Tyler J. Roth
                              Michael Aldana
                              Federal Bar No. 1020233WI
                              Tyler J. Roth
                              Federal Bar No. 1104801WI
                              QUARLES & BRADY LLP
                              411 East Wisconsin Avenue, Suite 2350
                              Milwaukee, WI  53202-4426
                              Phone:  414.277.5151
                              Email: michael.aldana@quarles.com
                                        tyler.roth@quarles.com

                              *Attorneys for Plaintiff*
                              *Procter & Gamble Manufacturing Company*