UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PROCTER & GAMBLE MANUFACTURING COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Cause No. 4:18 CV 1026 RWS ) |
| ASSOCIATION OF EMPLOYEES OF THE ST. LOUIS PLANT, | ) ) ) ) |
| Defendant. | ) |

# **MEMORANDUM & ORDER**

This matter is before me on the parties' cross-motions for summary judgment. Plaintiff Procter & Gamble (P&G) moves to vacate an arbitration award (the Award) that reinstated Nick Hassard, an employee who P&G had previously terminated. P&G argues it is entitled to vacatur of the Award because the arbitrator exceeded his authority when he ordered P&G to reinstate Hassard. Defendant Association of Employees of the St. Louis Plant (the Union) moves for enforcement of the Award and argues that the arbitrator acted within the scope of his authority when he ordered P&G to reinstate Hassard. The parties do not dispute the material facts at issue or that summary judgment is proper in this case.

## I. BACKGROUND

Nick Hassard, a member of the Union, began working at P&G in 2005. On July 27, 2017, P&G discharged Hassard after a series of disciplinary violations, the last of which was a third failure to lock out and tag out (LOTO) energy from a large piece of machinery a couple of days earlier. The final violation arose when Hassard briefly "broke the plane" of a machine without having followed the proper LOTO procedure. Based on Hassard's previous violations, the company moved Hassard to step four of its four-step Progressive Discipline System (PDS). At step four of the PDS, an employee is terminated. See Procter & Gamble Manufacturing Company's Statement of Uncontroverted Material Facts, ECF No. 24, at ¶ 5 (table outlining the PDS).

After P&G terminated Hassard, the Union filed a grievance under Article XIV of the Collective Bargaining Agreement (CBA) that governed the employment relationship between P&G and Hassard. P&G and the Union did not resolve the grievance internally. Because the grievance was not resolved, the grievance was submitted the dispute to a Board of Arbitration (the Board) according to the procedure in the governing CBA. That procedure sets forth that P&G and the Union may each appoint one arbitrator to the board, while the third arbitrator is picked from a rotating panel of arbitrators listed in the CBA. In this

case, the third arbitrator was Josef Rohlik (the Arbitrator), who also drafted the Award.

The question the parties presented to the Board was "the general question of whether or not the company had cause to terminate [Hassard] and if not what the remedy should be." ECF No. 25-3, 21:15-19. After a hearing on December 6, 2017, the Arbitrator submitted his draft Opinion and Award to the arbitrators for P&G and the Union on April 17, 2018. The Award found that P&G did not have just cause[1] to terminate Hassard, and it ordered P&G to reinstate Hassard without back pay. The Union's arbitrator, Michael Reilman, concurred in the Award on April 23, 2018, making it final and binding on the parties. See CBA, ECF No. 25-1, at 38 (page 34 in original document) ("The decision of any two of the three arbitrators shall be final and binding upon the Employer and the Union."). As of the cross-filings for summary judgment in this case, P&G has not reinstated Hassard.

## II. LEGAL STANDARD

### a. Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Gilkerson v. Nebraska Colocation Centers, LLC, 859 F.3d 1115, 1118 (8th Cir.

---

[1] Both P&G and the Union have referred to the "cause" inquiry as a "just cause" inquiry. See Pl. Compl., ECF No. 1, ¶ 2; Def./Counter-Pl. SUMF, ECF No. 28, ¶ 14.

2017) (citing Fed. R. Civ. P. 56(a)). At the summary judgment stage, "[a]ll facts must be viewed in the light most favorable to the nonmoving party." Id. The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324.

    b.    **Arbitration**

A court's review of an arbitration award is "extremely limited." United Food & Comm. Workers v. Shop 'N Save Warehouse Foods, Inc., 113 F.3d 893, 894 (8th Cir.1997). Courts give "substantial deference to labor arbitration awards because federal policy favors the resolution of private labor disputes by arbitration to which the parties agreed." Boehringer Ingelheim Vetmedica, Inc. v. United Food & Commercial Workers, 739 F.3d 1136, 1139 (8th Cir. 2014). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Id. at 1140 (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)).

For example, the court may not disturb the arbitrator's "view of the facts." Alvey, Inc. v. Teamsters Local Union No. 688, 132 F.3d 1209, 1212 (8th Cir.1997). Indeed, it may not revisit the merits of an award even if it believes the arbitrator "committed serious error" when interpreting the CBA at issue. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). "An arbitrator's award must be enforced as long as he is arguably construing or applying the collective bargaining agreement rather than dispensing his own brand of industrial justice." Homestake Mining Co. v. United Steelworkers of America, 153 F.3d 678, 680 (8th Cir.1998) (internal quotation marks and brackets omitted). That standard is met as long as the award "draws its essence from" the governing CBA. Int'l Paper Co. v. United Paperworkers Int'l Union, 215 F.3d 815, 817 (8th Cir.2000).

## III. Analysis

To determine whether vacatur is warranted in this case, I consider two issues. First, I review the factual record and the Award to determine whether the Arbitrator acted within the scope of his authority based on the question the parties presented to the Board. Second, I evaluate whether the Award is "arguably construing or applying" the CBA between the parties. Boehringer Ingelheim Vetmedica, Inc., 739 F.3d at 1139.

5

### a. The Award Did Not Exceed the Scope of the Question Presented

The Parties' CBA sets forth how arbitrators are to consider the issues presented to them:

> The Board of Arbitration shall confine its consideration to the issue or issues stipulated jointly in writing by the employer and the Union before the Board of Arbitration convenes, and they shall neither add to nor subtract from the written stipulation or the written provisions of this agreement in making a decision.

See CBA, ECF No. 25-1, at 37-38 (pages 33-34 in original document).[2] The question presented to the Board establishes a two-step inquiry: 1) whether the company had just cause to terminate Hassard, and 2) if the company did not have cause to terminate Hassard, what should the remedy be?

P&G argues the Award implies that P&G had just cause to terminate Hassard, and the Arbitrator exceeded his authority when he nonetheless moved to step two of the inquiry and fashioned an alternate remedy. Initially, as P&G argues, this case appears similar to N. States Power Co., Minnesota v. Int'l Bhd. of Elec. Workers, Local 160, 711 F.3d 900 (8th Cir. 2013). In N. States Power Co., the Eighth Circuit ruled that an arbitrator who even impliedly found that a company had "just cause" to terminate an employee exceeded his authority when he also decided to order the company to reinstate the employee. 711 F.3d at 903

---

[2] While the parties did not formally stipulate to the issues presented in writing, they agree that the issues, or question, presented to the Board was "whether or not the company had [just] cause to terminate [Hassard] and if not what the remedy should be." ECF No. 25-3, 21:15-19.

("Having answered the [just cause] question in the affirmative, the arbitrator had no authority to address the second question or to fashion a remedy different than the termination."). However, as I am mindful that "[j]udicial review of the arbitrator's ultimate decision is very deferential," I do not find it warranted to extend the holding N. States Power Co. to the different set of facts before me in this case. 711 F.3d at 901. This case is distinct from N. States Power Co. in three important ways that are central to my ruling.

First, the N. States Power Co. opinion considered a specific CBA provision that is not at issue in this case. There, the arbitrator was interpreting a CBA that contained language stating "in the matter of suspension, demotion, or discharge, if after hearing witnesses, the charges are not sustained . . . the arbitration board may rule that the employee shall or shall not receive full or partial wages from the Company." 711 F.3d at 902 (quoting the CBA at issue). That provision constrained the arbitrator's authority in a way not applicable here: the parties in the case before me do not argue that there is a CBA provision that specifically guides the Arbitrator's consideration of the propriety of punishment.

Second, because of the more specific CBA provision in the N. States Power Co. case, the Eighth Circuit opinion evaluated whether the arbitrator found that the employer substantiated the *charges* underlying the punishment, rather than the propriety of the punishment itself. Finally, the award in N. States Power Co. found

7

that the employer had "demonstrated justification" for its decision to terminate the employee, a stronger finding than the Arbitrator in this case made.

The question in this case, which asks whether P&G had just cause to terminate Hassard, is necessarily a question of the propriety of Hassard's termination. This means the question asks not only whether Hassard committed the violations P&G alleges, but also whether those violations provide just cause to terminate Hassard in light of the totality of the circumstances. A finding that Hassard broke the rules as alleged by P&G is not necessarily a finding that P&G had just cause to terminate him.

Accordingly, the Award took pains to clarify what specifically the arbitrator found. The Award states "<u>the Company did not abuse its discretion as a matter of violation of the Agreement, its Rules, and the practice of the Parties.</u>" ECF No. 25-4, at 14 (underline in original). It also states that the Arbitrator could not conclude "that P&G could not decide to discharge [Hassard] after the third LOTO violation." <u>Id.</u> at 15. These statements affirm that P&G sustained its charge that Hassard's actions at work violated the Agreement, P&G's Rules, and the practice of the parties. They also affirm that the PDS lists termination as the consequence of reaching the fourth step in the Progressive Disciplinary System. The question was not what happens at step four, it is whether P&G had just cause to move Hassard to step four and terminate him.

8

Before the Arbitration Board and before me, the Union has not disputed the factual underpinnings of Hassard's violations of the Agreement, P&G's Rules, and the practice of the parties. See, e.g., Arb. Tr., ECF No. 25-3, at 22:19-25 ("largely the facts that brought us to this day are not in dispute . . . the union's never contested whether or not a violation has occurred."); Defendant/Counter-Plaintiff's Response to Procter & Gamble Manufacturing Company's Statement of Uncontroverted Material Facts, ECF No. 32, at ¶¶ 6-7 (disputing P&G's facts on the basis they are argumentative, not that they are incorrect). But it is different to find that P&G was correct to allege that Hassard had violated company policies and procedures, and theoretically *could* be escalated to step four of the PDS in a vacuum, and to determine that P&G had just cause to terminate Hassard.

The Arbitrator does not state or imply that Hassard's violations gave P&G just cause to escalate Hassard to step four of the PDS and terminate him; the Award makes clear that the factual inquiry is separate from the inquiry of whether those facts give the company just cause to terminate Hassard. For example, the Award observes that when an arbitrator finds a company has not abused its discretion in the disciplinary process, the arbitrator ordinarily denies the employee's (union's) grievance. However, the Award continues, sometimes a reversal of the company's decision is warranted. Award, ECF No. 25-4, at 15. The Arbitrator "in forty years of arbitration practice encompassing over two

9

thousand cases has done it three times, and this case is the fourth." Id. This statement distinguishes between finding no abuse of discretion "as a matter of violation of the Agreement, its Rules, and the practice of the Parties," and affirmatively finding just cause for termination. Id. at 14.

Both the reasoning and ultimate remedy in the Award make clear the Arbitrator concluded that P&G did not have just cause to move Hassard to step four of the PDS and terminate him. Because the Award did not find or imply that P&G had just cause to terminate Hassard, the Arbitrator did not exceed his authority when he moved to step two of the two-part question presented and fashioned an alternate remedy.

**b. The Award Drew Its Essence From the CBA**

My finding that the Award did not go beyond the question presented informs my conclusion that the Award does not exceed the Arbitrator's authority under the CBA. P&G's assertion that the Award goes beyond the Arbitrator's authority is in part belied by the fact that P&G itself agreed to ask the Board whether the company had just cause to terminate Hassard. In this case, "it is highly significant that both parties explicitly asked the arbitrator to find whether" Hassard "was discharged for sufficient just cause and to determine the appropriate remedy if he was not. When two parties submit an issue to arbitration, it confers authority upon the arbitrator to decide that issue." Local 238 Int'l Bhd. of Teamsters, Chauffeurs,

10

Warehousemen & Helpers v. Cargill, Inc., 66 F.3d 988, 990–91 (8th Cir. 1995). P&G "cannot now argue that the arbitrator had no authority to decide an issue it agreed to submit." Id. at 991.

P&G's arguments in favor of vacatur of the Award are targeted at its merits and reasoning. P&G argues that the Award subtracted from the PDS, disregarded the actions the company took when deciding to discharge Hassard, balanced equities when reinstating Hassard, and relied on incorrect facts not in the record. None of these arguments undermine the authority P&G granted the arbitrator when it posed the question of whether P&G had just cause to terminate Hassard.

As its central argument, the company contends the Award subtracts from the CBA because it does not give full effect to the PDS. P&G asserts the PDS is incorporated into the CBA by reference in Article XVIII. CBA, ECF No. 25-1, at 41 (marked as page 37 on the original document). However, Eighth Circuit case law "differentiates between explicit contractual language and rules or policies promulgated under a general management rights clause like the one in the present case." Trailmobile Trailer, LLC v. Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO, 223 F.3d 744, 748 (8th Cir. 2000). When he interpreted the language of the CBA, the Arbitrator was not conclusively bound by the company's discretionary decisions under its PDS.

11

Accordingly, the Award clearly references, considers, and interprets the parties' arguments in light of the PDS, but it also considers evidence of practice and the testimony that "ultimately the discipline is a matter of judgment" and "discretionary." Award, ECF No. 25-4, at 7; id. at 15. The Award additionally considers the actual circumstances of Hassard's third LOTO violation and other factors that mitigate the severity of the violation, such as Hassard's overall record as an employee. Based on the question presented, the CBA, and the evidence before him, the Arbitrator correctly concluded that he had discretion to reconsider P&G's termination decision. The resulting Award rises above the legal requirement that the "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." Boehringer Ingelheim Vetmedica, Inc. v. United Food & Commercial Workers, 739 F.3d 1136, 1140 (8th Cir. 2014) (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)).

P&G argues the Arbitrator inappropriately balanced equities in this case when he considered additional factors outside of Hassard's disciplinary violations. However, the Eighth Circuit has repeatedly upheld arbitration awards where arbitrators consider factors like the ones the arbitrator considered here. See Tower Rock Stone Co. v. Quarry & Allied Workers Local No. 830, 918 F. Supp. 2d 902, 908–09 (E.D. Mo. 2013) (collecting cases). In this case, the Award's discussion of

the various factors that support and detract from the parties' positions is appropriately part of the just cause inquiry.

P&G correctly identifies a factual error in the Award: Hassard's daughter had not died of a heroin overdose when P&G terminated him. This was a minor error, as the Award also cited testimony that Hassard was dealing with the stress of his daughter's addiction at the time of his termination, even if she had not yet passed when he was terminated. It did not form a substantial portion of the basis of the Award. See Award, ECF No. 25-4, at 15 (citing the "factors noted previously in Finding #2" before mentioning the death of Hassard's daughter as an additional factor the Arbitrator considered). Moreover, "courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001).

For the foregoing reasons, I conclude that the Award drew its essence from the governing CBA.

### c. Attorney's Fees

The Union seeks attorney's fees from P&G. "Section 301 of the Labor-Management Relations Act does not authorize an award of attorneys' fees to the prevailing party." Actors' Equity Ass'n v. Am. Dinner Theatre Inst., 802 F.2d 1038, 1043 (8th Cir. 1986) (citing 29 U.S.C. § 185). However, the Eighth Circuit

has recognized that in "exceptional circumstances," such as where a party litigates in bad faith, fees may be appropriate. United Elec., Radio & Mach. Workers of Am., Local 1139 v. Litton Microwave Cooking Prod., Litton Sys., Inc., 704 F.2d 393, 400 (8th Cir. 1983), on reh'g, 728 F.2d 970 (8th Cir. 1984). An "unjustified refusal to abide by an arbitrator's award may constitute bad faith for the purpose of awarding attorneys' fees." Int'l Union, United Auto. Workers v. United Farm Tools, Inc., Speedy Mfg. Div., 762 F.2d 76, 77 (8th Cir.1985).

I cannot conclude that P&G filed this action in bad faith. Its claims were not ultimately successful, but they were not "frivolous, unreasonable or groundless." Actors' Equity Assoc., 802 F.2d at 1042. Especially in light of the Eighth Circuit's holding N. States Power Co., Minnesota v. Int'l Bhd. of Elec. Workers, Local 160, 711 F.3d 900 (8th Cir. 2013), P&G's decision to move to vacate the Award was based on a good faith disagreement, and an award of attorneys' fees is not warranted.

### d. Prejudgment Interest

The Union seeks prejudgment interest for Hassard from the date of the Award. "As a general rule, prejudgment interest is to be awarded when the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of money which was legally due." Stroh Container Co. v.

Delphi Indus., Inc., 783 F.2d 743, 752 (8th Cir. 1986) (citing Behlar v. Smith, 719 F.2d 950, 954 (8th Cir.1983)).

Here, the underlying liability is reasonably capable of ascertainment, because it is based on the specific date range that runs from the date the Award became binding through Hassard's reinstatement. The Award became binding on April 23, 2018, when Union arbitrator Michael Reilman submitted his concurrence to the Arbitrator. Absent prejudgment interest, I find that this order would fall short of making Hassard whole. I will award prejudgment interest.

Federal law does not specify what rate of prejudgment interest I should order; I have discretion to set a prejudgment interest rate when enforcing an arbitration award. Though I am not bound by Missouri state law in this case, I find that Missouri's general prejudgment interest rate of 9% per annum is reasonable in light of the circumstances. See RSMo. § 408.020 (providing for "interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable"). An award of prejudgment interest compensates Hassard for the true costs he incurred when P&G refused to reinstate him as required by the Award. See Stroh Container Co., 783 F.2d at 752 (citing General Facilities, Inc. v. National Marine Service, Inc., 664 F.2d 672, 674 (8th Cir.1981)).

## IV. Conclusion

The Arbitrator clearly intended to separate his abuse-of-discretion inquiry from his finding against just cause for termination. He also had authority under the CBA to determine the appropriate remedy in this case, and his remedy drew its essence from the CBA. I conclude that the Award must be enforced, and Hassard must be reinstated with back pay and prejudgment interest.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment [ECF No. 22] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment [ECF No. 26] is **GRANTED in part.**

**IT IS FURTHER ORDERED** that the April 17, 2018 Opinion and Award In the matter of Arbitration between Procter & Gamble, Mfg. Co. and Association of Employees of the St. Louis Plant is **CONFIRMED** and shall be enforced.

**IT IS FURTHER ORDERED** that Procter & Gamble must immediately reinstate Nick Hassard with full back pay from April 23, 2018 through the date of reinstatement. P&G must also include 9% interest on the total amount of back payment.

**IT IS FURTHER ORDERED** that the Association of Employees of the St. Louis Plant's request for attorney's fees and costs is **DENIED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2019.